The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| WASHINGTON FARMLAND TRUST, AGROECOLOGY COMMONS, ROGUE FARM CORPS d/b/a OREGON FARM CORPS, SYRACUSE-ONONDAGA FOOD SYSTEMS ALLIANCE & THIRD SECTOR NEW ENGLAND,<br><br>                    *Plaintiffs*,<br>          v.<br><br>U.S. DEPARTMENT OF AGRICULTURE & BROOKE L. ROLLINS, *in her official capacity as Secretary of Agriculture*,<br><br>                    *Defendants*. | CASE NO. 2:26-cv-2689<br><br>**PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705 OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION**<br><br>NOTE ON MOTION CALENDAR: SEPTEMBER 2, 2026<br><br>ORAL ARGUMENT REQUESTED |

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. ii

Introduction............................................................................................................................ 1

Background ............................................................................................................................. 2

    A.    USDA's grant programs ................................................................................... 2

    B.    President Trump's Executive Orders ............................................................... 3

    C.    USDA's adoption of the 2026 Terms ............................................................... 5

    D.    USDA's sweeping view of covered conduct ................................................... 8

    E.    Harm to Plaintiffs........................................................................................... 9

Standard of Review .............................................................................................................. 11

Argument ............................................................................................................................. 11

    I.    Plaintiffs are likely to succeed on the merits. .................................................... 11

    A.    Plaintiffs have standing................................................................................. 11

    B.    Plaintiffs are likely to succeed on the merits of their claims. ....................... 12

        1.    The Challenged Conditions violate the First Amendment....................... 12

        2.    The Challenged Conditions violate the Fifth Amendment. ..................... 16

        3.    The Challenged Conditions violate the Spending Clause........................ 20

        4.    The Challenged Conditions violate the separation of powers. ................ 22

        5.    The Challenged Conditions exceed USDA's statutory authority. ........... 23

        6.    The Challenged Conditions are arbitrary and capricious......................... 23

        7.    The Challenged Conditions are contrary to constitutional right.............. 25

    II.    Plaintiffs will suffer irreparable injury absent prompt relief. .......................... 25

    III.    The balance of equities and public interest favor Plaintiffs............................. 27

    IV.    The Court should stay the Challenged Conditions under Section 705. ........... 27

Conclusion ........................................................................................................................... 28

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – i –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

## TABLE OF AUTHORITIES

**Cases**

*Agency for International Development v. Alliance for Open Society International, Inc.*,
570 U.S. 205 (2013)................................................................................................ 13, 14

*Altera Corp. & Subsidiaries v. Commissioner*,
926 F.3d 1061 (9th Cir. 2019) ....................................................................................... 23

*American Trucking Ass'ns v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) ....................................................................................... 26

*Arizona Dream Act Coalition v. Brewer*,
757 F.3d 1053 (9th Cir. 2014) ....................................................................................... 27

*Arlington Central School District Board of Education v. Murphy*,
548 U.S. 291 (2006)........................................................................................................ 20

*Arlington v. FCC*,
569 U.S. 290 (2013)........................................................................................................ 22

*Arrington v. Daniels*,
516 F.3d 1106 (9th Cir. 2008). ...................................................................................... 23

*City & County of San Francisco v. Trump*,
779 F. Supp. 3d 1077 (N.D. Cal. 2025)........................................................................ 26

*City & County of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018) ................................................................................. 12, 22

*City of Chicago v. DOJ*,
822 F. Supp. 3d 873 (N.D. Ill. 2026) ........................................................................... 21

*City of Fresno v. Mullin*,
No. 26-cv-01535, 2026 WL 1998576 (N.D. Cal. July 9, 2026) ............................... 12

*City of Fresno v. Turner*,
No. 25-cv-07070, 2025 WL 2721390 (N.D. Cal. Sept. 23, 2025)...................... 16, 18

*City of Los Angeles v. Barr*,
929 F.3d 1163 (9th Cir. 2019) ....................................................................................... 20

*City of Seattle v. Trump*,
808 F. Supp. 3d 1214 (W.D. Wash. 2025)................................................................... 16

*County of Santa Clara v. Noem*,
815 F. Supp. 3d 979 (N.D. Cal. 2025) .................................................................... 18, 22

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – ii –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

*Department of Commerce v. New York*,
   588 U.S. 752 (2019) .......................................................................................................... 23

*DHS v. Regents of the University of California*,
   591 U.S. 1 (2020) .............................................................................................................. 25

*FCC v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012) .......................................................................................................... 16

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021) .......................................................................................................... 23

*Garcia v. County of Alameda*,
   150 F.4th 1224 (9th Cir. 2025) ......................................................................................... 11

*GEO Group, Inc. v. Newsom*,
   50 F.4th 745 (9th Cir. 2022) ............................................................................................. 11

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) .......................................................................................................... 17

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017) ............................................................................................ 26

*Housing Authority of City & County of San Francisco v. Turner*,
   No. 25-cv-08859, 2025 WL 3187761 (N.D. Cal. Nov. 14, 2025) .......................... 18, 19, 21, 22

*Immigrant Defenders Law Center v. Noem*,
   145 F.4th 972 (9th Cir. 2025) ........................................................................................... 28

*Immigration Center for Women & Children v. Noem*,
   No. 2:25-cv-09848, 2026 WL 1455004 (C.D. Cal. May 20, 2026) ................................... 28

*Koala v. Khosla*,
   931 F.3d 887 (9th Cir. 2019). ........................................................................................... 13

*Landor v. Louisiana Department of Corrections & Public Safety*,
   146 S. Ct. 1931 (2026) ...................................................................................................... 20

*Martin Luther King, Jr. County v. Turner*,
   785 F. Supp. 3d 863 (W.D. Wash. 2025) ..................................................................... 22, 23

*Massachusetts v. United States*,
   435 U.S. 444 (1978) .......................................................................................................... 20

*Massachusetts v. USDA*,
   No. 26-cv-11396, 2026 WL 1815807 (D. Mass. June 24, 2026) ............................... *passim*

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – iii –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ........................................................................... 26, 27

*Motor Vehicle Manufacturers Ass'n of the U.S., Inc. v. State Farm Mutual Automobile Insurance Co.*,
   463 U.S. 29 (1983) .................................................................................................. 23

*National TPS Alliance v. Noem*,
   150 F.4th 1000 (9th Cir. 2025) ............................................................................... 11

*NEA v. Finley*,
   524 U.S. 569 (1998) ................................................................................................ 13

*New York v. United States*,
   505 U.S. 144 (1992) ................................................................................................ 21

*Novedades y Servicios, Inc. v. Financial Crimes Enforcement Network*,
   __ F.4th __, 2026 WL 2016724 (9th Cir. July 13, 2026) ........................................ 28

*NRA v. Vullo*,
   602 U.S. 175 (2024) ................................................................................................ 13

*Pennhurst State School & Hospital v. Halderman*,
   451 U.S. 1 (1981) .................................................................................................... 20

*Reno v. ACLU*,
   521 U.S. 844 (1997) ................................................................................................ 16

*Rosenberger v. Rector & Visitors of University of Virginia.*,
   515 U.S. 819 (1995) ...................................................................................... 12, 13, 14

*Rust v. Sullivan*,
   500 U.S. 173 (1991) ................................................................................................ 14

*Sammartano v. First Judicial District Court*,
   303 F.3d 959 (9th Cir. 2002) .................................................................................. 27

*San Francisco A.I.D.S. Foundation v. Trump*,
   786 F. Supp. 3d 1184 (N.D. Cal. 2025) ...................................................... 12, 13, 15

*San Francisco Unified School District v. AmeriCorps*,
   789 F. Supp. 3d 716 (N.D. Cal. 2025) ............................................................... 18, 22

*San Francisco Unified School District v. AmeriCorps*,
   No. 25-cv-02425, 2025 WL 974298 (N.D. Cal. Mar. 31, 2025) .............................. 26

*South Dakota v. Dole*,
   483 U.S. 203 (1987) .......................................................................................... 20, 21

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – iv –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

*Stavrianoudakis v. U.S. Fish & Wildlife Service*,
108 F.4th 1128 (9th Cir. 2024) ...................................................................... 12

*Thakur v. Trump*,
163 F.4th 1198 (9th Cir. 2025) ................................................................ 13, 27

*Thakur v. Trump*,
176 F.4th 1187 (9th Cir. 2026). ............................................................... 13, 14

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)................................................................................... 28

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982)............................................................................. 16, 17

*Washington State Ass'n of Head Start & Early Childhood Assistance & Education
Program v. Kennedy*,
820 F. Supp. 3d 1178 (W.D. Wash. 2026)..................................................... 24

**Statutes**

5 U.S.C. § 705............................................................................................ 2, 27

7 U.S.C. § 1627c............................................................................................. 2

7 U.S.C. § 2201............................................................................................... 2

7 U.S.C. § 2279(a)(5)................................................................................ 10, 21

7 U.S.C. § 2279(a)(6)................................................................................ 10, 21

7 U.S.C. § 2279(c) ............................................................................. 10, 21, 24

7 U.S.C. § 2279(d)(1) ............................................................................ 2, 14, 21

7 U.S.C. § 3157(b)(2) ...................................................................................... 2

7 U.S.C. § 7517............................................................................................... 2

16 U.S.C. § 3839aa-8...................................................................................... 2

42 U.S.C. § 1769(g) ................................................................................. 14, 21

**Constitutional Provisions**

U.S. Const., art. I, § 8, cl. 1............................................................................ 22

U.S. Const., art. I, § 9, cl. 7............................................................................ 22

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – v –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

**Executive Orders**

Executive Order 14151, *Ending Radical and Wasteful Government DEI Programs and Preferencing,*
90 Fed. Reg. 8339 (2025) ................................................................................. 3

Executive Order 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government,*
90 Fed. Reg. 8615 (2025) ................................................................ 3, 4, 15, 18

Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity,*
90 Fed. Reg. 8633 (2025) ................................................................... 4, 15, 18

Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders,*
90 Fed. Reg. 10581 (2025) ............................................................................ 4, 5

**Other Authorities**

Office of the Attorney General, *Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination* (July 29, 2025) .......................................................... 9

USDA, *Agricultural Marketing Service (AMS) General Terms and Conditions for Grants and Agreements* (Mar. 2026) ............................................................................. 6

USDA, Memorandum, *The Golden Age of Civil Rights* (Jan. 8, 2026) .................................. 8, 15

USDA, NIFA Quarterly Civil Rights Call – Understanding New Federal Requirements (Dec. 10, 2025) ................................................................................................ 9

USDA, Secretary's Memorandum 1078-001, *Prioritizing Unity, Equality, Meritocracy, and Color-Blind Policies in the United States Department of Agriculture* (Feb. 13, 2025) ............. 5

USDA, Secretary's Memorandum 1078-004, *Directive on Departmental Grant and Cooperative Agreement Priorities* (Mar. 13, 2025) .................................................................. 5

USDA, Secretarial Memorandum 1078-021, *Establishment of USDA General Terms and Conditions for Grants, Cooperative Agreements, and Similar Arrangements* (Dec. 31, 2025) ................................................................................................ 6, 15

USDA, *USDA Strengthens National Security and Protects Taxpayers by Standardizing Grant and Cooperative Agreement Requirements* (Dec. 31, 2025) ...................................... 3

USDA NIFA, *General (Research, Education, Extension) Terms and Conditions for Federal Awards* (Mar. 2026). ...................................................................................... 6

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – vi –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

**INTRODUCTION**

The U.S. Department of Agriculture (USDA) distributes tens of billions of dollars in grant funding annually, as an essential part of carrying out the Department's mission of assisting American farmers, improving health and nutrition, and conserving and protecting natural resources. But now, USDA has repurposed its grant funding to push unrelated ideological projects. Beginning in late December 2025, USDA inserted into the grants' terms and conditions four provisions that have nothing to do with nutrition, agriculture, or anything else within USDA's statutory ambit. These terms threaten to sanction or pull funding from grantees who, in USDA's view, improperly speak in favor of principles of diversity, equity, and inclusion (DEI), promote "gender ideology," or engage in certain immigration-related speech. It is unclear the full extent of the terms' prohibitions. But it *is* clear that these terms harshly penalize grantees who express viewpoints disfavored by the Trump administration, wholly unrelated to the purpose of the grants. As a result, the terms discourage those with independent views from applying for grants.

The new terms violate grantees' rights and far exceed USDA's authority. The First Amendment does not permit USDA to use grant programs to suppress disfavored views or restrict speech that is entirely unrelated to the nutrition and agriculture programs that Congress authorized it to fund. And the Fifth Amendment and Spending Clause prohibit USDA from imposing vague terms that fail to give grantees fair notice of what is proscribed. The terms also exceed USDA's statutory authority and undermine the separation of powers. And they are arbitrary and capricious because they are neither reasonable nor reasonably explained. Indeed, another district court has already found the terms unlawful and enjoined their enforcement against a group of plaintiff states. *See Massachusetts v. USDA*, No. 26-cv-11396, 2026 WL 1815807, at *15–23 (D. Mass. June 24, 2026). This Court should reach the same conclusion and block these unlawful terms.

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 1 –
(No. 2:26-cv-2689)

Plaintiffs are organizations that have previously received grant funding from USDA and that either have recently applied for further funding or would have applied but for the unlawful new terms and conditions. USDA's action has put Plaintiffs to an impossible choice: They must either give up on critical funding that has allowed them to effectively serve their communities or agree to substantial restrictions on their speech and programming. Already, Plaintiffs are irreparably harmed by these unlawful terms, as are the communities they serve. This Court should thus stay the four challenged conditions under 5 U.S.C. § 705 or issue a preliminary injunction enjoining Defendants from imposing or enforcing them.

## BACKGROUND

### A.    USDA's grant programs

Congress tasked USDA with sponsoring research into, promoting best practices related to, and providing support for "agriculture, rural development, aquaculture, and human nutrition." 7 U.S.C. § 2201. To this end, Congress directed USDA to administer a range of grant programs. USDA grants provide critical funding for organizations working to support farmers and ranchers, expand access to healthy and local food, and incorporate principles of conservation and sustainability into the system that produces the food we eat. For example, USDA funds research into and education about food safety, nutrition, and the environment, *id.* § 3157(b)(2); projects promoting low-income consumers' purchase of fruits and vegetables, *see id.* § 7517; and programs to assist early-career farmers and ranchers, *id.* § 2279(d)(1). Other USDA grants go to help farmers, ranchers, and forest landowners integrate conservation into working lands, *see* 16 U.S.C. § 3839aa-8, and to expand capacity for locally produced food, *see* 7 U.S.C. § 1627c. Congress has appropriated billions of dollars annually for USDA to spend on grantmaking. Last fiscal year, "the Department distributed over $145 billion through 287 programs, resulting in nearly 38,000 new

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 2 –
(No. 2:26-cv-2689)

awards." USDA, *USDA Strengthens National Security and Protects Taxpayers by Standardizing Grant and Cooperative Agreement Requirements* (Dec. 31, 2025).[1]

**B.      President Trump's Executive Orders**

From the beginning of his second term, President Trump issued Executive Orders aimed at imposing his policy views about diversity, gender identity, and immigration. Four are relevant.

**1.** On President Trump's first day in office, he issued Executive Order 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing, 90 Fed. Reg. 8339 (2025) (Government DEI EO). The Government DEI EO instructed agencies to terminate "'equity-related' grants or contracts"; provide the Director of the Office of Management and Budget (OMB) with a list of grantees that had received funding to "provide or advance DEI"; and recommend steps that would "align agency … grants" with the Order's anti-DEI policy goals. *Id.* § 2(b), 90 Fed. Reg. at 8339–40. The Order further required agencies to excise DEI from other aspects of hiring, programming, and management. *Id.* § 2(b)(iii)(B), 90 Fed. Reg. at 8340. And it instructed each agency to "recommend actions … to align agency or department programs" with the administration's anti-DEI policies. *Id.*

**2.** Also on January 20, 2025, President Trump issued Executive Order 14168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, 90 Fed. Reg. 8615 (2025) (Gender Ideology EO). The Gender Ideology EO declared it "the policy of the United States to recognize two sexes, male and female." *Id.* § 2, 90 Fed. Reg. at 8615. It instructed that "[f]ederal funds shall not be used to promote gender ideology," and it ordered agencies to "ensure grant funds do not promote gender ideology." *Id.* § 3(g), 90 Fed. Reg.

---

[1] https://www.usda.gov/about-usda/news/press-releases/2025/12/31/usda-strengthens-national-security-and-protects-taxpayers-standardizing-grant-and-cooperative.

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 3 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

at 8616. The Order stated that "gender ideology" "replaces the biological category of sex with an ever-shifting concept of self-assessed gender identity" and "includes the idea that there is a vast spectrum of genders that are disconnected from one's sex." *Id.* § 2(f), 90 Fed. Reg. at 8615–16. It did not define what constitutes the "promotion" of gender ideology.

3. The next day, President Trump issued Executive Order 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, 90 Fed. Reg. 8633 (2025) (DEI EO). The DEI EO stated that its purpose was to "ensure that" the federal government "enforce[s] our civil rights laws" to "end[] illegal preferences and discrimination." *Id.* § 1, 90 Fed. Reg. at 8633. It directed agencies "to enforce our longstanding civil-rights laws and to combat illegal private-sector DEI preferences, mandates, policies, programs, and activities." *Id.* § 2, 90 Fed. Reg. at 8633. It instructed the head of OMB to revise processes and guidance, including procedures related to "grants[] and financial assistance," to "[e]xcise references to DEI and DEIA principles, under whatever name they may appear." *Id.* § 3(c)(ii), 90 Fed. Reg. at 8634. And it ordered agency heads to "include in every contract or grant award" terms requiring recipients to agree that "compliance in all respects with all applicable Federal anti-discrimination laws is material to the government's payment decisions," and to "certify that [they] do[] not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws." *Id.* § 3(b)(iv)(B), 90 Fed. Reg. at 8634. The DEI EO did not specify when, in the Trump administration's view, DEI programming constitutes unlawful discrimination. Parts of the Order, though, indicate that the administration plans to define *all* DEI as unlawful. *See, e.g.*, *id.* § 4, 90 Fed. Reg. at 8635 (discussing "illegal discrimination and preferences, including DEI").

4. On February 19, 2025, President Trump issued Executive Order 14218, Ending Taxpayer Subsidization of Open Borders, 90 Fed. Reg. 10581 (2025) (Immigrant Support EO).

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 4 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

The Immigrant Support EO purported to work to "prevent taxpayer resources from acting as a magnet and fueling illegal immigration to the United States, and to ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens." *Id.* § 2(a), 90 Fed. Reg. at 10581. It instructed agency heads to "identify all federally funded programs administered by the agency that currently permit illegal aliens to obtain any cash or non-cash public benefit, and, consistent with applicable law, take all appropriate actions to align such programs with the purposes of this order and the requirements of applicable Federal law." *Id.*

### C.    USDA's adoption of the 2026 Terms

Soon after her confirmation as Secretary of Agriculture in February 2025, Defendant Rollins took steps to comply with these Executive Orders. On her first day in office, Secretary Rollins ordered the recission of all "Diversity, Equity, Inclusion, and Accessibility (DEIA)" programs within USDA. USDA, Secretary's Memorandum 1078-001, *Prioritizing Unity, Equality, Meritocracy, and Color-Blind Policies in the United States Department of Agriculture* (Feb. 13, 2025).[2] In that memorandum, Secretary Rollins expressed the view that "'equity' is a concept at war with this nation's founding." *Id.* A month later, Secretary Rollins issued a directive extending the policy of terminating diversity programming to USDA's grantmaking portfolio. *See* USDA, Secretary's Memorandum 1078-004, *Directive on Departmental Grant and Cooperative Agreement Priorities* (Mar. 13, 2025).[3] That directive defined, as a departmental priority, "ensuring that the Department's grants … do not support programs or organizations that promote or take part in diversity, equity, and inclusion ('DEI') initiatives." *Id.*

---

[2] https://www.usda.gov/directives/sm-1078-001.

[3] https://www.usda.gov/sites/default/files/documents/sm-1078-004.pdf.

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 5 –
(No. 2:26-cv-2689)

Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

On December 31, 2025, Secretary Rollins directed USDA component agencies to adopt and implement department-wide terms and conditions for future grants. USDA, Secretarial Memorandum 1078-021, *Establishment of USDA General Terms and Conditions for Grants, Cooperative Agreements, and Similar Arrangements* (Dec. 31, 2025) (Rollins Memo).[4] Secretary Rollins described the purpose of the new terms as "advanc[ing] policies that put America First." *Id.* at 1. And she indicated that they would "implement and uphold the Department's priorities," including by "[s]trengthening USDA control and oversight of obligated funds, and compliance with applicable laws, regulations, and policy priorities." *Id.* Among these policy priorities was the elimination of DEI programming: In that memo, Secretary Rollins mandated that "no USDA awards may fund or otherwise support diversity, equity, and inclusion ('DEI') initiatives or any other initiatives that discriminate on the basis of immutable characteristics." *Id.* at 2. Secretary Rollins instructed USDA agencies to implement the new terms and conditions within forty-five days. *Id.* USDA's major grantmaking agencies have now done so. *See, e.g.*, USDA, *Agricultural Marketing Service (AMS) General Terms and Conditions for Grants and Agreements* (Mar. 2026);[5] USDA NIFA, *General (Research, Education, Extension) Terms and Conditions for Federal Awards* (Mar. 2026).[6]

Simultaneously with Secretary Rollins's memo, USDA released the new terms and conditions. *See* USDA, *General Terms and Conditions for Federal Awards* (effective Dec. 31,

---

[4] https://www.usda.gov/sites/default/files/documents/sm-1078-021.pdf.

[5] https://www.ams.usda.gov/sites/default/files/media/FY26AMSGDGeneralTermsandConditions.pdf.

[6] https://www.nifa.usda.gov/sites/default/files/2026-03/NIFA-5-3a_General%20Terms%20and%20Conditions-508.pdf.

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 6 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

2025) (2026 Terms).[7] Plaintiffs challenge four of these provisions, referred to here as the Challenged Conditions.

**The Discrimination Policy Provision** (section 12.2) restricts grantees' work—and related speech—on issues of gender identity and diversity, equity, and inclusion. It requires grantees to certify their compliance "with all applicable Federal antidiscrimination laws, regulations, and policies for the duration of the Federal award." It provides a list of policies that grantees must follow—including the Gender Ideology EO and the DEI EO—but states that the list is not exhaustive. And it does not explain how grantees are expected to comply with the terms of those Executive Orders, even as many of their provisions purport to apply only to federal agencies. The Discrimination Policy Provision also requires grantees to certify that they will not operate any programs that "advance or promote Diversity, Equity, and Inclusion in violation of Federal anti-discrimination laws." The provision does not clarify which DEI programs the administration believes violate federal law. But it threatens criminal liability and liability under the False Claims Act for grantees who improperly certify.

**The Gender Ideology Provision** (section 13.5) instructs that "[n]o funding shall be used to promote gender ideology" and incorporates the Gender Ideology EO into the terms and conditions governing all USDA grants. The Gender Ideology Provision does not explain what it means to "promote gender ideology."

**The DEI Provision** (section 13.6) incorporates the DEI EO into the terms of all USDA grant awards. The DEI Provision also requires grantees to certify that "they do not operate any

---

[7] https://www.usda.gov/sites/default/files/documents/usda-general-terms-conditions-2025.pdf.

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 7 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

programs that promote Diversity, Equity, or Inclusion (DEI) that violate any applicable Federal antidiscrimination laws." It provides no guidance about the reach of this prohibition.

**The Immigrant Support Provision** (section 13.10) prohibits the direction of funding toward programs that "allow illegal aliens to obtain taxpayer-funded benefits, provide public resources to meet the needs of illegal aliens, or provide incentives for illegal immigration by demonstrating the availability of public benefits." The provision expressly incorporates the terms of the Immigrant Support EO. It does not provide any clear guidance on what kind of speech or conduct would "demonstrat[e] the availability of public benefits" in a way that incentivizes "illegal immigration."

**D.        USDA's sweeping view of covered conduct**

In the ensuing months, USDA has forecasted how the Department will interpret and enforce the Challenged Conditions.

In January 2026, in a memorandum addressed to all USDA employees, USDA's Assistant Secretary for Civil Rights announced the Department's intention to "enforce civil rights laws to eliminate discriminatory DEI and 'diversity, equity, inclusion, and accessibility' (DEIA) mandates," for both internal USDA programming and recipients of USDA funding. USDA, Memorandum, *The Golden Age of Civil Rights* (Jan. 8, 2026) (Golden Age Memo).[8] As guidance for how USDA planned to interpret relevant civil rights laws, the memo pointed to recent executive branch documents related to the Trump administration's anti-DEI efforts. One document expressly referenced was a July 2025 memorandum from then-Attorney General Pamela Bondi, which purported to "clarif[y] the application of federal antidiscrimination laws" but in fact announced

---

[8] https://intranet.usda.gov/sites/default/files/media/documents/
The%20Golden%20Age%20of%20Civil%20Rights%20Memorandum%201.08.26.pdf.

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 8 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

the administration's view that a broad range of widely accepted practices are unlawful. *See* Off. of the Atty. Gen., *Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination* (July 29, 2025)[9] (Bondi Memo). The Bondi Memo provides an expansive but non-exhaustive list of practices that DOJ considers to be unlawful, including the consideration of job applicants' "cultural competence" or "cross-cultural skills"; requirements to consider a diverse slate of applicants when hiring; the provision of DEI-related training discussing racial privilege; and the creation of programming or resources with an "identity-based focus." The Bondi Memo does not name any statutory mandates that such practices might violate, and it does not cite a single case holding that such practices are unlawful.

USDA has also indicated it will expansively construe the 2026 Terms. For instance, staff in USDA's National Institute for Food and Agriculture (NIFA) instructed that those terms required grantees to "eliminat[e] any DEI-related offices, titles, positions, programs, and activities" and "discontinu[e]" any "targeted" outreach "on the basis of protected class status." *See* USDA, NIFA Quarterly Civil Rights Call – Understanding New Federal Requirements (Dec. 10, 2025).[10]

### E.    Harm to Plaintiffs

Each Plaintiff has been faced with the choice of forgoing USDA funding or accepting these conditions and self-censoring. Either option dramatically harms Plaintiffs.

Plaintiffs Washington Farmland Trust and the Syracuse-Onondaga Food Systems Alliance (SOFSA) have received substantial USDA funding in the past but are not able to operate under USDA's new terms. USDA recently awarded Washington Farmland Trust a three-year, $676,452 grant under USDA's 2501 Program, which is subject to the 2026 Terms. Campbell Decl. ¶¶ 8–13.

---

[9] https://www.justice.gov/ag/media/1409486/dl.

[10] https://www.youtube.com/watch?v=F23pYlD71ZY&t=1059s.

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 9 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

Consistent with the statute governing that program, 7 U.S.C. § 2279(a)(5)–(6), (c), Washington Farmland Trust's approved project plan involves "outreach and assistance for socially disadvantaged" farmers. Campbell Decl. ¶ 9. Washington Farmland Trust staff spent significant staff time trying to understand how it could operate that project without running afoul of the anti-DEI provisions in the new terms and conditions. *Id.* ¶¶ 14–16. Ultimately, the Trust determined that, though its programming is entirely lawful, it could not agree to the Challenged Conditions without fundamentally altering its approach to expanding access to farmland for new farm businesses, abandoning ongoing commitments to partner organizations, and stifling its advocacy efforts. *Id.* ¶¶ 14–23. Washington Farmland Trust has not yet used any funds from its 2501 Program grant, and it will imminently need to walk away from the grant unless the Challenged Conditions are removed. *Id.* ¶ 25. Similarly, SOFSA has decided that it will not apply for USDA grant funding while the Challenged Conditions remain in place, even though USDA funding has been critical to the organization's work over the last five years. *See* Ackerman Decl. ¶ 13. But SOFSA cannot carry out its work building an equitable food system in the Central New York region without risking noncompliance with the Challenged Conditions, despite the lawfulness of SOFSA's programming. *Id.* ¶¶ 14–23.

Plaintiffs Agroecology Commons, Oregon Farm Corps, and Third Sector New England (TSNE) depend substantially on USDA funding to support their work, which includes training new farmers, consulting with early-stage farm businesses, and working to increase access to healthy and local foods. *See* Atwood Decl. ¶¶ 5–6; Gordon Decl. ¶¶ 6–7; Ng Decl. ¶¶ 6–17. Each organization has determined that, to sign the 2026 Terms, it would be forced to make significant changes to how it speaks about its programs, recruits and advertises to prospective clients, and trains staff and participants. *See* Atwood Decl. ¶¶ 9–14; Gordon Decl. ¶¶ 11–17. Indeed, TSNE

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 10 –
(No. 2:26-cv-2689)

has already done so. *See* Ng Decl. ¶¶ 19–26. Although Plaintiffs believe that their programming is lawful, each has determined that USDA's new terms require such changes, particularly given the uncertainty about the terms' vague wording. *See* Atwood Decl. ¶¶ 10, 13–14; Gordon Decl. ¶¶ 12–13; Ng Decl. ¶¶ 18–26. Such changes will make it more difficult for Plaintiffs to build trust with partner organizations, operate their programs effectively, and ultimately pursue their missions. *See* Atwood Decl. ¶¶ 12–15; Gordon Decl. ¶¶ 14–17; Ng Decl. ¶ 27. But the changes are necessary, as each organization has determined that USDA grant funding is too important to its work to forgo entirely. *See* Atwood Decl. ¶ 16; Gordon Decl. ¶ 18; Ng Decl. ¶¶ 27–28.

## STANDARD OF REVIEW

"The postponement of agency action under the" Administrative Procedure Act (APA), 5 U.S.C. § 705, "is governed by the preliminary injunction factors." *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1015 (9th Cir. 2025). "To obtain a preliminary injunction, a plaintiff must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors the plaintiff, and (4) that an injunction is in the public interest." *GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 753 (9th Cir. 2022) (en banc). The final two factors "merge" where "the party opposing injunctive relief is a government entity." *Garcia v. Cnty. of Alameda*, 150 F.4th 1224, 1234 (9th Cir. 2025).

## ARGUMENT

**I.    Plaintiffs are likely to succeed on the merits.**

   **A.    Plaintiffs have standing.**

Because of the Challenged Conditions, Plaintiffs are facing or imminently will face concrete harm. The Challenged Conditions force Plaintiffs to choose between USDA funding and their right to speak freely about diversity, gender, and immigration. *See infra* at 12–16. Such a

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 11 –
(No. 2:26-cv-2689)

"forced choice" to either "'forfeit[] a constitutional right in exchange for a benefit'" or have the government "withhold[] a benefit based on [their] refusal to surrender a constitutional right" is a cognizable injury for standing purposes. *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1138 (9th Cir. 2024); *see also S.F. A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1211 (N.D. Cal. 2025), *appeal filed* No. 25-4988 (finding standing where plaintiffs must "change their programming to enable them to make the certification; make the certification without changes and risk a false certification; or give up federal funds and contracts").

Here, the new terms forced Plaintiffs Washington Farmland Trust and SOFSA to hold off on using or walk away from USDA grants entirely, with substantial blows to their budgets and plans. *See* Campbell Decl. ¶¶ 25–27; Ackerman Decl. ¶¶ 11–13, 23. Such a "loss of funds promised under federal law[] satisfies Article III's standing requirement." *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1235 (9th Cir. 2018) (alteration in original). The other Plaintiffs have determined that they will need to change their programming to agree to the new terms and conditions, and Plaintiff TSNE has already done so. *See* Atwood Decl. ¶¶ 9–16; Gordon Decl. ¶¶ 11–15; Ng Decl. ¶¶ 19–26. Reviewing similar claims of existent or imminent harm, courts handling cases challenging unlawful grant conditions have regularly "found Article III standing was satisfied." *City of Fresno v. Mullin*, No. 26-cv-01535, 2026 WL 1998576, at *31 (N.D. Cal. July 9, 2026) (collecting cases).

**B.      Plaintiffs are likely to succeed on the merits of their claims.**

**1.      The Challenged Conditions violate the First Amendment.**

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). "Discrimination against speech because of its message is presumed to be

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 12 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

unconstitutional." *Id.* Because "viewpoint discrimination is uniquely harmful to a free and democratic society," *NRA v. Vullo*, 602 U.S. 175, 187 (2024), the government cannot regulate speech "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale," *Rosenberger*, 515 U.S. at 829.

In the context of federal funding, the government may impose certain conditions that "affect the recipient's exercise of its First Amendment rights." *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013). But to avoid creating "an unconstitutional burden," these conditions are subject to strict limits. *Id.* The Challenged Conditions exceed those limits.

**a.** The First Amendment includes "the bedrock principle that the government cannot 'leverage its power to award subsidies on the basis of subjective criteria into a penalty on disfavored viewpoints' or 'aim at the suppression of dangerous ideas' in the provision of subsidies." *Thakur v. Trump* (*Thakur I*), 163 F.4th 1198, 1206 (9th Cir. 2025) (quoting *NEA v. Finley*, 524 U.S. 569, 587 (1998)). Put differently, "the government can violate the First Amendment by withholding benefits for a censorious purpose." *Koala v. Khosla*, 931 F.3d 887, 898 (9th Cir. 2019). "[W]here the government establishes a subsidy program, it may not discriminate between speakers within that program to suppress viewpoints with which it disagrees." *Thakur v. Trump (Thakur II)*, 176 F.4th 1187, 1200 (9th Cir. 2026).

The Challenged Conditions plainly restrict speech from certain viewpoints. *See S.F. A.I.D.S. Found.*, 786 F. Supp. 3d at 1220. The Gender Ideology Provision prohibits "promot[ing] gender ideology" but leaves grantees free to criticize gender ideology. 2026 Terms § 13.5. The Discrimination Policy and DEI Provisions similarly prohibit the "promot[ion]" of DEI but not its denigration. *Id.* §§ 12.2, 13.6. DEI is itself not a "neutral topic," reflecting "the viewpoint that the

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 13 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

exclusion of historically disadvantaged groups is undesirable." *Thakur II*, 176 F.4th at 1201 (citing *Rosenberger*, 515 U.S. at 829). And the Immigrant Support Provision would prohibit publicizing a list of government-funded programs available to undocumented immigrants, while conversely leaving grantees free to advocate for terminating such programs.

**b.** Under the First Amendment, the government also cannot "seek to leverage funding to regulate speech outside the contours of the program itself." *Agency for Int'l Dev.*, 570 U.S. at 214–15. When the government "place[s] a condition on the *recipient* of the subsidy rather than on a particular program or service" it has impermissibly "prohibit[ed] the recipient from engaging in the protected conduct outside the scope of the federally funded program." *Rust v. Sullivan*, 500 U.S. 173, 197 (1991). The government cannot "requir[e] recipients to profess a specific belief" when "participating in activities on [their] own time and dime." *Agency for Int'l Dev.*, 570 U.S. at 218. The government is likewise barred from imposing conditions that are "not relevant to the objectives of the program." *Id.* at 214.

The Challenged Conditions do exactly what the First Amendment prohibits: Several restrictions are not limited to how grantees use federal funds; they instead restrict speech writ large. For example, the DEI Provision requires grantees to certify that "they do not operate *any* programs" that unlawfully promote DEI. 2026 Terms § 13.6 (emphasis added). Similarly, the Discrimination Policy Provision requires grantees to follow administration policies "for the duration of the Federal award," not just with respect to the covered programs. *Id.* § 12.2. What's more, the Challenged Conditions are entirely irrelevant to the objectives of USDA's programs, which all have specific focuses, such as promoting access to healthy and local foods or helping new farmers build their businesses. *See, e.g.*, 7 U.S.C. § 2279(d)(1); 42 U.S.C. § 1769(g). Issues

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 14 –
(No. 2:26-cv-2689)

Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

of DEI, gender ideology, and immigration have nothing to do with those objectives. *See S.F. A.I.D.S. Found*, 786 F. Supp. 3d at 1219–20.

**c.** USDA cannot reasonably defend the Challenged Conditions—including their restrictions on speech outside of the federal program—on the ground that they require only that a grantee certify it is not breaking the law. To start, the Challenged Conditions collectively require recipients to certify their compliance with federal *policies*, not just federal law. *See* 2026 Terms §§ 12.2, 13.5, 13.6 & 13.10. Those policies include substantial viewpoint discrimination disconnected from existing law, including recognizing only two sexes, *see* Gender Ideology EO § 2, 90 Fed. Reg. at 8615, and "[e]xcising references to DEI and DEIA principles," DEI EO § 3, 90 Fed. Reg. at 8634. The Immigrant Support Provision similarly forbids speech the government disfavors—namely, speech that demonstrates the availability of benefits to undocumented immigrants—without any reference to or alignment with existing statutory constraints. Requiring certification of compliance with federal policy is much broader than requiring certification of compliance with federal law.

Moreover, USDA and other federal government components have recently taken an expansive view, unsupported by precedent, of what practices violate federal law. Secretary Rollins, for instance, has repeatedly equated *all* DEI activity with unlawful discrimination, including when discussing the 2026 Terms. *See* Rollins Memo at 2, *supra* note 4 (adopting policy that "no USDA awards may fund or otherwise support diversity, equity, and inclusion ('DEI') initiatives or any other initiatives that discriminate on the basis of immutable characteristics"). Shortly after adopting the new terms, USDA indicated its belief that civil rights law requires the "eliminat[ion]" of DEI. *See* Golden Age Memo at 1, *supra* note 8. And USDA has stated that, to guide its application of those laws, it will use a DOJ memo suggesting it is unlawful to provide DEI training

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 15 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

about racial privilege or ask program applicants to discuss the challenges they have faced or their experiences as a member of an identity group. *Id.* at 2. But no court has found that these practices violate the law. That context makes clear that grantees have been left "at the mercy of [USDA's] interpretation of federal antidiscrimination laws, regardless of how those laws are interpreted by the courts." *City of Seattle v. Trump*, 808 F. Supp. 3d 1214, 1217 (W.D. Wash. 2025), *appeal filed* No. 25-8096. As a result, the terms "'threaten[] to inhibit the exercise of constitutionally protected [First Amendment] rights,'" with Plaintiffs left "guessing whether previously permissible activities—such as hosting community workshops, providing space for local affinity groups' programs and events, or even just using [certain words]—violate the Federal Grant Conditions." *City of Fresno v. Turner*, No. 25-cv-07070, 2025 WL 2721390, at *13–14 (N.D. Cal. Sept. 23, 2025) (second and third alterations in original) (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982)), *appeal filed* No. 25-7378.

This problem is heightened because the Discrimination Policy Provision expressly threatens severe penalties, including criminal sanctions, if a grantee improperly certifies compliance. *See* 2026 Terms § 12.2. Where such severe penalties are at stake, First Amendment scrutiny is even more searching because those "sanctions may well cause speakers to remain silent rather than communicate" their "words[] [and] ideas." *Reno v. ACLU*, 521 U.S. 844, 872 (1997). The fear of stiff penalties provides yet another reason that grantees' protected speech will be unlawfully chilled.

**2.    The Challenged Conditions violate the Fifth Amendment.**

The Challenged Conditions are also unconstitutionally vague. "[C]larity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Requirements imposed by the government

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 16 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

are unconstitutionally vague if they fail to either (1) give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited" or (2) "provide explicit standards for those who apply them," thereby encouraging "arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). "[P]erhaps the most important factor impacting the clarity that the Constitution demands" is whether a provision "threatens to inhibit the exercise of constitutionally protected rights," such as "the right of free speech." *Vill. of Hoffman Ests.*, 455 U.S. at 499. Where, as here, such rights are implicated, "a more stringent vagueness test should apply." *Id.*

Each Challenged Condition is unconstitutionally vague because it provides no clear notice about what is prohibited, including what speech grantees may engage in.

**Discrimination Policy and DEI Provisions.** The Discrimination Policy Provision requires grantees to certify their compliance with "all applicable Federal … policies." 2026 Terms § 12.2. This provision does not detail what policies are included. Although it offers a list of five policies, it expressly states that this list is not exhaustive. Grantees are given no answer as to what policies they must comply with or where such policies can be found. As another court recently found with respect to this exact USDA provision, "[i]t belies credulity to state that the Department's use of the terms 'policies' … speaks 'so clearly' as to provide [plaintiffs] with" a meaningful understanding of what is prohibited. *Massachusetts*, 2026 WL 1815807, at *15.

Grantees must also certify that they will comply with applicable federal policies "for the duration" of the award. 2026 Terms § 12.2. During that time, though, USDA could adopt different or additional anti-discrimination policies. "A condition that directs compliance with 'applicable existing and future Executive Orders' provides no meaningful guidance as to what conduct is

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

expected, tolerated, or prohibited." *Hous. Auth. of City & Cnty. of S.F. v. Turner*, No. 25-cv-08859, 2025 WL 3187761, at *14 (N.D. Cal. Nov. 14, 2025), *appeal filed* No. 26-233.

Next, the Discrimination Policy and DEI Provisions are unlawfully vague in their incorporation of both the Gender Ideology EO and the DEI EO. *See* 2026 Terms §§ 12.2, 13.6. These Orders are directed largely at federal agencies, and "it is not clear what compliance with the EOs requires of *Plaintiffs*." *City of Fresno*, 2025 WL 2721390, at *15. For example, the Gender Ideology EO states that it is "the policy of the United States to recognizes two sexes." Gender Ideology EO § 2, 90 Fed. Reg. at 8615. USDA's new terms do not make clear whether grantees must acknowledge that policy, likewise recognize only two sexes, or do something else. Application of the DEI EO is even less clear. It directs parts of the federal government to terminate all "diversity" or "equity" "programs[]" or "activities," and urges the private sector to similarly "end illegal discrimination and preferences, including DEI." DEI EO §§ 2, 4(b), 90 Fed. Reg. at 8633–34. But the terms do not specify what programs are covered and whether grantees, too, must terminate such programs.

The Discrimination Policy Provision and DEI Provision also require grantees to certify that they will not "advance or promote" unlawful DEI. 2026 Terms §§ 12.2, 13.6. These provisions do not define DEI and do not explain when speech qualifies as advancing or promoting it. Without clarification, these requirements are "rife with vagueness and ambiguity, leaving grantees to speculate what is proscribed and what is permitted." *Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d 979, 1034 (N.D. Cal. 2025), *appeal filed* No. 26-402; *see also S.F. Unified Sch. Dist. v. AmeriCorps*, 789 F. Supp. 3d 716, 749–50 (N.D. Cal. 2025) (collecting cases); *Massachusetts*, 2026 WL 1815807, at *15.

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 18 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

**Gender Ideology Provision.** The Gender Ideology Provision is equally vague. It incorporates the Gender Ideology EO into the terms of all awards, which is vague for the reasons just discussed. The provision is also unclear in its instruction that funding cannot be "used to promote gender ideology." *See* 2026 Terms § 13.5. Neither the provision nor the Gender Ideology EO clearly defines "gender ideology." And there is no indication of what it means to "promote" gender ideology, including whether merely acknowledging the existence of trans people or asking about pronouns would qualify. Given this uncertainty, at least one Plaintiff has already altered how it talks about gender. *See* Ng Decl. ¶ 25. The lack of guidance on such key questions renders the condition ambiguous. *See Massachusetts*, 2026 WL 1815807, at *16. The condition is also particularly "incoherent" in the context of agricultural grants, which "may have no particular nexus to 'gender ideology.'" *Hous. Auth. of City & Cnty. of S.F.*, 2025 WL 3187761, at *14.

**Immigration Support Provision.** Similarly, the Immigration Support Provision, as another court has observed, "raises more questions than it answers." *Massachusetts*, 2026 WL 1815807, at *16. First, it prohibits funding from going to "programs" that engage in proscribed conduct. 2026 Terms § 13.10. It is unclear whether "programs" refers to a grantee's entire operational program or the specific funded activity. What's more, the provision provides no clarity regarding its prohibition against "demonstrating the availability of public benefits" in a way that "incentivizes illegal immigration." *Id.* Are grantees prohibited from creating a list of food banks that provide donations to everybody, without demanding proof of immigration status? Because the provision's scope is unclear, Plaintiffs put themselves in the crosshairs by offering clients USDA-funded services or guidance on government programs without regard to immigration status. *See, e.g.*, Campbell Decl. ¶ 22. This lack of clarity chills protected speech and renders the provision fatally vague.

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 19 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

### 3.     The Challenged Conditions violate the Spending Clause

The Challenged Conditions also contravene the Spending Clause. Although the Spending Clause, U.S. Const. art. I, § 8, cl. 1, authorizes the attachment of conditions to federal funds, there are well-established limits on the type of conditions the government may impose. *See City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 (9th Cir. 2019) (applying limits to agency's imposition of conditions). Two are relevant here. First, if the government "desires to condition the … receipt of federal funds, it 'must do so unambiguously.'" *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). Second, "conditions on federal grants might be illegitimate if they are unrelated 'to the federal interest in particular national projects or programs.'" *Id.* (quoting *Massachusetts v. United States*, 435 U.S. 444, 461 (1978) (plurality op.)).

**a.** The Challenged Conditions are unlawfully ambiguous. Under the Spending Clause, the question is "whether [a recipient] … would clearly understand … the obligations of the" conditions. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). This clear-statement rule fulfills an important purpose: "Congress must impose spending conditions 'unambiguously' … so that participants in federally funded programs may 'exercise their choice knowingly, cognizant of the consequences of their participation.'" *Landor v. La. Dep't of Corr. & Pub. Safety*, 146 S. Ct. 1931, 1944 (2026) (quoting *Dole*, 483 U.S. at 207). And the Spending Clause does not allow for "post acceptance or 'retroactive' conditions on funding." *Pennhurst*, 451 U.S. at 25.

As explained above (at 17–19) and as courts have routinely recognized when examining similar or even identical conditions, the Challenged Conditions do not give recipients clear notice of their prohibitions. *See, e.g.*, *Massachusetts*, 2026 WL 1815807, at *15–16 (discussing lack of

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 20 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

clarity in same USDA terms); *City of Chicago v. DOJ*, 822 F. Supp. 3d 873, 889–90 (N.D. Ill. 2026); *Hous. Auth. of City & Cnty. of S.F.*, 2025 WL 3187761, at \*14. The Discrimination Policy Provision also raises a risk of impermissible retroactivity, as it requires compliance with unspecified and potentially future "policies."

**b.** In addition, the Challenged Conditions violate the Spending Clause because they are unrelated to the grant programs' purposes. Conditions on federal funds "must ... bear some relationship to the purpose of the federal spending." *New York v. United States*, 505 U.S. 144, 167 (1992); *see Dole*, 483 U.S. at 208–09. Issues related to DEI, gender, and immigration have nothing to do with the purposes of USDA's grant programs, such as promoting access to healthy and local foods or helping new farmers build their businesses. *See, e.g.*, 7 U.S.C. § 2279(d)(1); 42 U.S.C. § 1769(g). As another court recently held, because these conditions "are not reasonably related to the federal interest in the Department's programs," they "violate the Spending Clause." *Massachusetts*, 2026 WL 1815807, at \*16.

Moreover, in some circumstances, the problem runs deeper because the Challenged Conditions are not just unrelated to the purposes of USDA's programs but conflict with them. For example, the statute creating the 2501 Program expressly provides that covered grants involve targeted outreach to socially disadvantaged farmers, which the statute defines to include members of racial groups that have faced historic discrimination. 7 U.S.C. § 2279(a)(5)–(6), (c). Several Plaintiffs operate 2501 Program projects, and USDA has approved their proposals that involve working with groups historically underrepresented in farming. *See* Campbell Decl. ¶¶ 8–9; Gordon Decl. ¶ 15. The Challenged Conditions put Plaintiffs in a Catch-22, as they cannot effectively carry out the work that USDA has funded while following seemingly inconsistent directives in the 2026 Terms. *See* Campbell Decl. ¶ 16. Where a condition conflicts with a statutory authorization

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 21 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

provision, "[i]t is hard to imagine" that the condition could be related to the grants. *Cnty. of Santa Clara*, 815 F. Supp. 3d at 1037; *see S.F. Unified Sch. Dist.*, 789 F. Supp. 3d at 750–51.

### 4.    The Challenged Conditions violate the separation of powers.

Federal agencies are "charged with administering congressional statutes"; "their power to act and how they are to act is authoritatively prescribed by Congress." *Arlington v. FCC*, 569 U.S. 290, 297 (2013). And because the Constitution "exclusively grants the power of the purse to Congress, not the President," *City & Cnty. of S.F.*, 897 F.3d at 1231 (citing U.S. Const., art. I, § 9, cl. 7 & U.S. Const., art. I, § 8, cl. 1), "[a]bsent congressional authorization, the Administration may not redistribute or withhold properly appropriated funds in order to effect its own policy goals," *id.* at 1235.

Congress has not authorized USDA to impose the Challenged Conditions. Notably, Congress has not conditioned the receipt of USDA grant funding on any of the substantive requirements of the Challenged Conditions—not on restricting activity on issues related to DEI, gender identity, or immigration, nor on following speech codes related to the same. Congress also has not delegated authority to USDA to impose such conditions on grantees. If Defendants want to exercise this authority, they "must identify specific legislation authorizing the challenged conditions or conferring on the executive branch the power to impose them." *Hous. Auth. of City & Cnty. of S.F.*, 2025 WL 3187761, at *12. They have not done so. USDA's adoption of the Challenged Conditions thus violates the separation of powers. *See, e.g.*, *Cnty. of Santa Clara*, 815 F. Supp. 3d at 1025–28; *Martin Luther King, Jr. Cnty. v. Turner*, 785 F. Supp. 3d 863, 886–88 (W.D. Wash. 2025), *appeal filed* No. 25-3664.

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 22 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

### 5. The Challenged Conditions exceed USDA's statutory authority.

For the same reasons that the Challenged Conditions violate the separation of powers, *see supra* at 22, they also exceed USDA's statutory authority, 5 U.S.C. § 706(2)(C). *See Martin Luther King, Jr. Cnty.*, 785 F. Supp. 3d at 885 (using same analysis because claims turn on "the same essential question").

### 6. The Challenged Conditions are arbitrary and capricious.

USDA's adoption of the Challenged Conditions is also arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). Under the APA, an agency action must be both "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). An action is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). One district court has already concluded that these same conditions meet that description. *Massachusetts*, 2026 WL 1815807, at *17–23. For four reasons, this Court should do the same.

*First*, USDA failed to reasonably explain its adoption of the Challenged Conditions. "[R]easoned decisionmaking" is "the touchstone of 'arbitrary and capricious' review under the APA." *Altera Corp. & Subsidiaries v. Comm'r*, 926 F.3d 1061, 1080 (9th Cir. 2019). An agency's reasoning cannot be "infer[red] … from mere silence." *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008). The requirement for reasonable explanation "is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public." *Dep't of Comm. v. New York*, 588 U.S. 752, 785 (2019).

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 23 –
(No. 2:26-cv-2689)

Here, USDA offered no reasoned explanation. The Rollins Memo purported to offer justifications, but they are inadequate. For example, the memo stated that the conditions "advance policies that put America First" and ensure compliance with applicable laws and policy priorities. Rollins Memo at 1, *supra* note 4. Such "platitudes," however, "cannot substitute for an actual explanation of why it is necessary to attach sweeping[] conditions to all the grants at issue here, regardless of their statutory purpose or programmatic objectives." *Massachusetts*, 2026 WL 1815807, at *20 (alteration in original). And USDA certainly "has not explained why funding streams used to support educational research, disaster relief, agricultural infrastructure, and pest management are being used as a tool to further the administration's priorities related to immigration, gender ideology, and diversity, equity, and inclusion practices." *Id.*

*Second*, the Challenged Conditions "are vague and unclear." *Id.* at *21. As explained (at 17–19), they lack meaningful guidance on what conduct or speech is prohibited while exposing grantees to serious penalties. "This lack of clarity leaves recipients guessing as to what conduct will violate the Challenged Conditions and leaves recipients vulnerable to arbitrary enforcement, which is exactly the conduct the APA prevents." *Id.*; *see also Wash. State Ass'n of Head Start & Early Childhood Assistance & Educ. Program v. Kennedy*, 820 F. Supp. 3d 1178, 1195 (W.D. Wash. 2026) (faulting defendants for failing to consider how "confusing policy changes have frustrated or made it impossible for Plaintiffs to function").

*Third*, USDA failed to consider substantial aspects of the issue when adopting the Challenged Conditions. Among other things, USDA did not consider the conflict between the conditions and the purposes Congress set out for a variety of USDA grant programs specifically focused on ensuring that USDA-funded programs include underserved or underrepresented communities, *see* 7 U.S.C. § 2279(c).

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 24 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

*Fourth*, USDA ignored significant reliance interests. "When an agency changes course," it must assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020). To "ignore" the "serious reliance interests" that "longstanding policies may have engendered" is arbitrary and capricious. *Id.* at 30. Grantees rely heavily on these USDA grants, as do the communities they serve and the activities they support. The agency issues billions of dollars of grants annually, supporting research and initiatives on food safety and nutrition, conservation, and rural communities. Plaintiffs' experiences are typical. They have received transformational funding from USDA that has helped them grow their programs, build connections with the communities they serve, and pursue their missions. *See* Campbell Decl. ¶ 7; Atwood Decl. ¶ 6; Gordon Decl. ¶¶ 6–7; Ackerman Decl. ¶¶ 7–8; Ng Decl. ¶¶ 6–17. But they now must either give up that funding or reorient their programs, including by substantially censoring their speech. *See* Campbell Decl. ¶¶ 27–28; Atwood Decl. ¶¶ 8–16; Gordon Decl. ¶¶ 12–18; Ackerman Decl. ¶ 13; Ng Decl. ¶ 18–26. There is no indication that USDA considered these reliance interests.

### 7.    The Challenged Conditions are contrary to constitutional right.

As explained (at 12–22), the Challenged Conditions violate the First Amendment, Fifth Amendment, Spending Clause, and separation of powers. They are therefore "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

## II.    Plaintiffs will suffer irreparable injury absent prompt relief.

Plaintiffs have been put to a choice "between refusing to sign a constitutionally objectionable grant agreement or signing a[] … grant agreement that contains unconstitutional conditions." *S.F. Unified Sch. Dist. v. AmeriCorps*, No. 25-cv-02425, 2025 WL 974298, at *4 (N.D. Cal. Mar. 31, 2025). "[H]aving to decide between two losing options constitutes irreparable

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 25 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

injury because 'very real penalty attaches to [Plaintiffs] regardless of how they proceed.'" *Id.* (quoting *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009)). For those Plaintiffs that have decided to sign a USDA grant agreement with the Challenged Conditions, but censor themselves to comply, that injury takes on a constitutional valence. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Here, that constitutional injury is imminent, or already occurring and ongoing. *See* Ng Decl. ¶¶ 18–26; Gordon Decl. ¶¶ 9, 14; Atwood Decl. ¶ 15.

Further, the practical impacts of that injury will compound without this Court's intervention. Plaintiff Washington Farmland Trust, for example, was awarded a grant through USDA's 2501 Program. *See* Campbell Decl. ¶ 10. But it has not spent any grant funds or begun work on that project because the organization has determined that it cannot carry out its work on behalf of immigrant farmers and farmers of color consistent with the Challenged Conditions. *Id.* ¶ 25. Because it will soon be forced to walk away from that USDA grant absent relief, Washington Farmland Trust now has a major hole in its budget, and the organization has had to pull back on needed work improving internal capacity and expanding the reach of its farmer-training work. *Id.* ¶¶ 26–29. Other Plaintiffs have already been forced to adjust project plans and program policies, and they anticipate spending substantial staff time and energy self-policing the language they use to describe their work if forced to agree to the Challenged Conditions. *See* Ng Decl. ¶¶ 18–29; Gordon Decl. ¶¶ 12–17; Atwood Decl. ¶¶ 11–15. Both "budgetary uncertainty" and "deprivation of constitutional rights" constitute irreparable harm. *City & Cnty. of S.F. v. Trump*, 779 F. Supp. 3d 1077, 1082 (N.D. Cal. 2025).

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 26 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

**III.    The balance of equities and public interest favor Plaintiffs.**

By contrast, the government—and, by extension, the public—will suffer no cognizable harm from this Court's award of preliminary relief. After all, "the government cannot suffer harm from an injunction that merely ends an unlawful practice." *Thakur I*, 163 F.4th at 1207 (internal quotation marks omitted). Rather, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002)). So, "by establishing a likelihood that Defendants' policy violates the U.S. Constitution, Plaintiffs have also established that both the public interest and the balance of equities favor" preliminary relief. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). The public will benefit, too. Were the Challenged Conditions not stayed, tens of billions of dollars in USDA funding would be subject to vague, confusing, and otherwise unlawful conditions. Those conditions make it harder for grantees to carry out the work that Congress has tasked them with, including important work promoting access to healthy foods, supporting small businesses, and building a sustainable and resilient food system. *See, e.g.*, Campbell Decl. ¶¶ 27–29; Atwood Decl. ¶ 8; Gordon Decl. ¶¶ 15–18; Ackerman Decl. ¶ 23; Ng Decl. ¶¶ 7–16, 27.

**IV.    The Court should stay the Challenged Conditions under Section 705.**

Section 705 of the APA allows a court to "postpone the effective date of an agency action or … preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. "The scope of interim relief under Section 705 is consistent with the scope of final relief under [Section 706], which grants federal courts the authority to 'hold unlawful and set aside agency action[s]' on a nationwide basis when the challenged action is held unlawful." *Novedades y*

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 27 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

*Servicios, Inc. v. Fin. Crimes Enf't Network*, __ F.4th __, 2026 WL 2016724, at *16 (9th Cir. July 13, 2026).

Here, a complete stay of the Challenged Conditions is necessary to "offer complete relief to the plaintiffs before the court." *Immigr. Defs. L. Ctr. v. Noem*, 145 F.4th 972, 995 (9th Cir. 2025) (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025)). Plaintiffs do not operate their programs in silos. They are subcontractors or subgrantees on other USDA grantees' projects, and they collaborate with fellow USDA grantees on much of their work. *See, e.g.*, Ng Decl. ¶ 33; Gordon Decl. ¶ 19. If the Court were to limit the scope of relief to only grants given to Plaintiffs, many would still be subject to or affected by the Challenged Conditions because their partners would still be bound. Plaintiffs would thus be left with the same injury: limited in what they could say and do, or unsure whether they can accept USDA funding at all. *See, e.g.*, Ng Decl. ¶ 33; Gordon Decl. ¶ 19. Because a narrower stay "would not remediate the irreparable harm to the plaintiffs" and "is not a workable solution," the Court should stay the Challenged Conditions entirely. *See Immigr. Ctr. for Women & Child. v. Noem*, No. 2:25-cv-09848, 2026 WL 1455004, at *46 (C.D. Cal. May 20, 2026).

In the alternative, the Court should stay the Challenged Conditions as to Plaintiffs or preliminarily enjoin Defendants from imposing or enforcing the conditions against Plaintiffs.

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court stay the challenged conditions under 5 U.S.C. § 705 or enter a preliminary injunction preventing their implementation and enforcement.

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 28 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*

Date:    August 5, 2026

*I certify that this memorandum contains 8,399 words, in compliance with the Local Civil Rules.*

Respectfully submitted,

*s/ Stephanie B. Garlock*
*s/ Becca Steinberg*
Stephanie B. Garlock* (DC Bar No. 1779629)
Becca Steinberg* (DC Bar No. 1736190)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
sgarlock@citizen.org
bsteinberg@citizen.org

*s/ David S. Muraskin*
David S. Muraskin* (DC Bar No. 1012451)
FarmSTAND
712 H Street NE, Suite 2534
Washington, DC 20002
(202) 595-8816
david@farmstand.org

*s/ Carrie Apfel*
Carrie Apfel* (DC Bar No. 974342)
Earthjustice
1001 G Street, NW, Suite 1000
Washington, DC 20001
(202) 667-4500
capfel@earthjustice.org

*s/ Kristen L. Boyles*
Kristen L. Boyles (WA Bar No. 23806)
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-7340
kboyles@earthjustice.org

*\*Admitted pro hac vice*

PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705
OR IN THE ALTERNATIVE FOR A PRELIMINARY INJUNCTION – 29 –
(No. 2:26-cv-2689)

*Public Citizen Litigation Group*
*1600 20th Street NW*
*Washington, DC 20009*
*(202) 588-1000*